# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUSTIN R. RITTER, SOURCE GROUP
MICHIGAN, LLC, ASCENTION PEO, LLC, and
ASCENTION, LLC,

UNPUBLISHED
May 31, 2016

Plaintiffs-Appellants,

v

No. 326743
Oakland Circuit Court
LC No. 2014-139213-NM

JAMES RASOR and RASOR LAW FIRM, PLLC,

Defendants-Appellees.

---

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court order granting both defendants' motion for summary disposition and their motion for sanctions and dismissing plaintiffs' case with prejudice. We affirm.

Plaintiff Austin Ritter is the principal, sole member, and owner of the LLC plaintiffs. Plaintiffs were in the business of providing payroll and employment services as independent contractors. Beginning in 2011, plaintiffs entered into a service agreement with Omega Solutions, LLC ("Omega") and also leased business space from that entity. The relationship fell apart and, in February 2012, Omega sued plaintiffs in Macomb County Circuit Court. Plaintiffs retained defendants to defend them in the Macomb County action and to commence an action against Omega. However, a default was entered against plaintiffs in the action in March 2012. According to plaintiffs, defendants did not take any action to prevent entry of a default judgment against them, did not address the default, and did not pursue plaintiffs' claims against Omega.

Plaintiffs initiated this legal malpractice case against defendants in February 2014, contending that due to defendants' actions (or lack thereof) plaintiffs had a default entered against them and lost all remedies and rights in the underlying Omega lawsuit[1] and that defendants' professional negligence caused or contributed to the complete collapse of plaintiffs'

---

[1] Plaintiffs agreed to dismiss their claim against defendants based upon a lost opportunity to sue Omega.

-1-

business enterprises. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10) asserting that plaintiffs could not establish causation for any of their asserted damages against defendants. Defendants additionally moved for the dismissal of plaintiffs' complaint as a sanction for plaintiffs' willful and repeated failure to disclose requested, relevant information during discovery and for plaintiff Austin Ritter's providing false deposition testimony and a false answer to at least one interrogatory. At the hearing on defendants' motions, the trial court opined that it would have adopted defendants' position regarding summary disposition, but that it was ultimately dismissing plaintiffs' complaint as a sanction for plaintiff Ritter's false testimony and false discovery answer. The trial court's order, entered March 19, 2015, granted "defendants' motion for summary disposition and motion for sanctions . . . for the reasons stated on the record." This appeal followed.

We review a trial court's imposition of discovery sanctions for an abuse of discretion. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659; 819 NW2d 28 (2011). An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

A motion for summary disposition under MCR 2.116(C)(10) is subject to de novo review. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings and other admissible documentary evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether there is any genuine issue in respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If there is not, the moving party is entitled to judgment as a matter of law. *Id*.

On appeal, plaintiffs contend that dismissal of their complaint as a discovery sanction was unwarranted, as any misstatements or inconsistencies viewed as dishonest or an effort to mislead defendants were simply innocently inaccurate answers to discovery questions. We disagree.

MCR 2.313(B)(2) provides for the imposition of discovery sanctions, in relevant part, as follows:

> If a party or an officer, director, or managing agent of a party, or a person designated . . . to testify on behalf of a party, fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:
>
> (a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party . . .

"[T]he court's chosen discovery sanction must be proportionate and just." *Hardrick*, 294 Mich App at 662. Dismissal is the harshest sanction available and is warranted only in extreme cases. *Schell v Baker Furniture Co*, 232 Mich App 470, 475; 591 NW2d 349 (1998), such as where there has been a flagrant and wanton refusal to facilitate discovery. *Mink v Masters*, 204 Mich App 242, 244; 514 NW2d 235 (1994). Before imposing the sanction of dismissal, a court should consider:

(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Vicencio v Ramirez*, 211 Mich App 501, 507; 536 NW2d 280 (1995)].

Trial courts also "possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*.

In this case, the discovery information sought by defendants, and about which plaintiffs are accused of being dishonest, concerns prior lawsuits to which plaintiffs have been a party. Defendants submitted interrogatories to plaintiffs on June 3, 2014. One of the interrogatories (#7) asked:

Have any of the plaintiffs been a party to any court proceeding or lawsuit in the past or at present? If so, for each proceeding or lawsuit, state:

a. the names of the parties

b. The name of the court where the proceedings were pending

c. The name and address of the attorney who represented each party; and

d. current disposition of the proceeding.

Plaintiffs listed two cases in response: Oakland County Circuit Court Action No. 2014-139213-NM (this case) and Macomb County Circuit Court Action No. 12-490-CK (Omega's lawsuit against plaintiffs). Plaintiffs also provided a list of attorneys who "have represented Austin Ritter, and related entities in the past" and a very brief description of the type of representation. Among the information provided was:

Steve Fishman-PEO HR and Labor Law

Jeff Fleury-Collections on Accounts Receivable

James Baiers-Corporate Law

Johnathan B. Frank P.C.- BSSI & Omega

James Razor, Tom Lindale

However, plaintiff Ritter had filed lawsuits in Oakland County Circuit Court against Omega and others in 2013 (Case No. 2013-131874-CK), against Building Service Specialists, Inc. in 2013 (Case No. 2013-134148-CZ), and against Frederick Handly Construction Inc. in 2005 (Case No. 2005-065154-CK). Plaintiff Ascension had also filed a lawsuit in Oakland County Circuit Court against Rex Sales Co., Inc. in 2013 (Case No. 2013-132176-CK) and plaintiff Ritter had been a defendant in an Oakland County Circuit Court lawsuit brought in 2010 by Dalton Industries (Case No. 2010-110387-CK). Defendants have additionally identified a Department of Labor lawsuit, a bankruptcy lawsuit, and a 60th District Court case that plaintiff Ritter or his companies were a party to, but failed to disclose in answers to interrogatories.

Plaintiffs assert that there was a vague reference to their 2013 case against Omega in their February 28, 2014 complaint in this matter. Plaintiffs direct us to paragraph 32 of the complaint where they stated, "Defendants errors, as described in this Complaint, resulted in Court Orders and judgments, the effect of which were subsequently determined to be dispositive of all claims and actions for the benefit of Plaintiffs on the basis of res judicata. Plaintiffs lost all rights and remedies as a consequence." Apparently, the 2013 case against Omega was dismissed on res judicata grounds. How defendants were supposed to infer the existence of the 2013 case against Omega based upon this admittedly vague reference is perplexing.

As to the failure to disclose the remaining lawsuits to which plaintiffs' had been a party, plaintiffs state that they provided their then-counsel, Mr. Acker, with information about attorneys representing them and the types of cases in which the attorneys appeared and assumed that Mr. Acker would identify any missing information and ensure that the interrogatory answers were complete. Plaintiffs assert that communication between them and Mr. Acker was poor and they essentially place the blame for any failure to identify prior lawsuits squarely on his shoulders. However, plaintiff Ritter signed a statement attached to the answers to interrogatories attesting that "he has attempted, in good faith, to respond to all of the interrogatories and requests for production of documents." Because Ritter was personally a plaintiff in several of the undisclosed lawsuits and he or the companies in which he was the sole owner were the plaintiff or defendant in the remaining undisclosed lawsuits, all of which were filed within a few years of the present matter, it is unreasonable to assert that Ritter had no specific information concerning the lawsuits or the attorneys he had retained to represent him (or his companies) in the same.

The trial court also indicated that plaintiff Ritter's deposition testimony was dishonest concerning prior lawsuits. At his November 2014 deposition, Ritter testified that after he terminated defendants, he hired Jonathan Frank as an attorney to represent him. When asked if he asked Mr. Frank to file a lawsuit on his behalf against Omega or its owners, Ritter first stated that he could not recall. When specifically asked, ". . .you did not file a lawsuit against Omega

[its owners] . . . correct, either you or a lawyer on your behalf?" Ritter answered, "correct." Ritter then asked for a break. When he returned, he apologized to counsel, indicating that he had "zoned out" a little during the last questioning and had not been following the questions very carefully. Ritter thereafter testified that he "fought all the way to Lansing and he wanted to go after Omega" but "we got shot down in Lansing." When asked for clarification as to whether he pursued filing a complaint against Omega, Ritter testified that he had to first appeal the default judgment entered against him in the Court of Appeals (which he did) and that "it's my understanding that we lost the ability to pursue that Omega case from the Court of Appeals in Lansing." From the above testimony, it appears that Ritter may have been unclear as to the effect of the prior litigation and believed it precluded him from pursuing the Omega matter at all when, in fact, a case had been filed against Omega on his behalf but the prior litigation had resulted in a dismissal of the Omega lawsuit. The above testimony is insufficient, standing alone, to find that Ritter deliberately lied about whether a case was filed against Omega on his behalf.

Ritter's testimony does reveal, however, that he was more than aware of other lawsuits against him despite the fact that the same do not appear in his answers to interrogatories. Ritter testified that he was aware of at least two other judgments against him and/or his companies besides the Omega default judgment. He testified that Drayton Pool and Spa had obtained a judgment against him within the past two years and that BSSI, a company he had stock in, had declared bankruptcy, leading to a trustee judgment against him. Ritter also testified concerning the 2013 Department of Labor lawsuit against him and further testified that "I'm sure there are some [other cases] out there, I don't recall right now." As defendants explain, the importance of knowledge of the prior lawsuits is that in the current legal malpractice claim, plaintiffs assert that defendants' malpractice was the cause or a cause of plaintiffs' business collapsing. However, in the undisclosed prior lawsuits, plaintiffs provided testimony and/or evidence indicating that their business collapse was wholly attributable to alternative causes.

Notably, plaintiffs were first served with interrogatories in June 2014. When they did not answer in a timely manner, defendants filed a motion to compel discovery. The parties resolved the issue by entry of a stipulation and order requiring plaintiffs to respond to the interrogatories within a specified time. When plaintiffs still failed to respond to the interrogatories, defendants filed a motion to dismiss plaintiffs' complaint in August 2014. Plaintiffs provided answers to some of the interrogatories within two weeks and provided supplementary, but still deficient, responses on September 12, 2014. On October 3, 2014, the trial court ordered plaintiffs to supplement their interrogatory responses and when they failed to do so, defendants thereafter moved to strike or dismiss certain of plaintiffs' damages claims. This motion was granted. Discovery closed in December, 2014 and it was apparently only through their own independent efforts that defendants learned of the other lawsuits. Thus, although plaintiffs had more than sufficient time to provide discovery responses, they never actually did so.

In dismissing plaintiffs' complaint as a sanction, the trial court found that plaintiffs' failure to comply with discovery requests and orders was deliberate and willful. It did not reference any court rule, but instead stated, "It was cheating. There is no lesser sanction than dismissal. Indeed, there are much greater sanctions." In this matter, we must agree. Plaintiffs' failure to provide the requested discovery information, specifically when given several opportunities to provide information concerning prior lawsuits, which was relevant to the entire

causation theory of plaintiffs' case, was a deliberate refusal to facilitate discovery. This refusal, coupled with the falsehoods concerning prior lawsuits warrant dismissal. The trial court's decision to dismiss the action in this case was not "the result of unrestrained discretion or imprudence. The court clearly acknowledged the harshness of the sanction and balanced it" against the severity of plaintiffs' misconduct. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). As indicated in *Maldonado*, 476 Mich at 392, "[t]he trial court has a gate-keeping obligation, when [] misconduct occurs, to impose sanctions that will not only deter the misconduct but also serve as a deterrent to other litigants." Dismissal was the appropriate sanction in this case. Given this conclusion, we need not consider whether dismissal would also have been warranted on summary disposition grounds.

Affirmed.


/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro